*This opinion is nonprecedential except as provided by Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A25-1217**

State of Minnesota,
Respondent,

vs.

Chad Alan Blood Milhausen, Jr.,
Appellant.

**Filed July 6, 2026
Affirmed in part, reversed in part, and remanded
Bond, Judge**

Redwood County District Court
File No. 64-CR-24-136

Keith Ellison, Attorney General, St. Paul, Minnesota; and

Shannon M. Ness, Redwood County Attorney, Marissa Pacheco, Assistant County Attorney, Redwood Falls, Minnesota; and

Travis J. Smith, Special Assistant County Attorney, Slayton, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Jessica Merz Godes, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Johnson, Presiding Judge; Bond, Judge; and Rasmusson, Judge.

**BOND**, Judge

In this direct appeal from the judgment of conviction for five counts of nonconsensual dissemination of private sexual images, appellant argues that he is entitled to a new trial due to the cumulative effect of prosecutorial misconduct. Alternatively, appellant argues that the warrant of commitment is incorrect. We affirm appellant's convictions, but we reverse and remand for the district court to correct the warrant of commitment.

## FACTS

Appellant Chad Alan Blood Milhausen, Jr. and A.O. were in an "on and off" relationship for about six years. Early in the relationship, when A.O. was 19 or 20, they consensually created sexually explicit photos and videos together using Milhausen's cellphone. The relationship later ended and A.O. moved out of Milhausen's apartment in May 2023. A.O. asked Milhausen to delete the photos and videos from his phone.

In February 2024, A.O. learned that sexually explicit photos and videos of her had been posted to the website FetLife.[1] A.O. created a FetLife account so she could view the materials and saw that six photos and three videos had been posted between June and October 2023 on an account she identified as Milhausen's. A.O. recognized her face or body in several of the photos, and, while she could not fully watch the videos without paying, she was certain they were the same videos that Milhausen had recorded during

---

[1] FetLife is a "fetish site" which operates as a type of social-media platform where users can upload photos and videos to their own profile and communicate with others.

their relationship. A.O. believed that Milhausen posted the materials because he was the only person with access to them. A.O. never gave Milhausen permission to post the photos and videos online.

A.O. felt "really disgusted, really embarrassed, [and] confused" that Milhausen had publicly posted sexually explicit material of her without her consent. And A.O. was especially concerned that the general availability of the photos might become known to her kids and would affect her "ability to interact and be a part of [her] community."

In March 2024, respondent State of Minnesota charged Milhausen with nine counts of nonconsensual dissemination of private sexual images in violation of Minn. Stat. § 617.261, subd. 1 (2022). The state later dismissed four of the charges. The remaining five charges proceeded to a jury trial, at which A.O., a police investigator, and a crime-victim services coordinator testified consistently with the above facts.

Milhausen testified in his defense. Milhausen testified that he only had a FetLife account because A.O. had introduced him to the site while they were still together. Even though Milhausen and A.O. were not in a romantic relationship when he posted the materials, Milhausen maintained that A.O. gave him permission to post the photos and videos on FetLife.

The jury found Milhausen guilty of all five counts. The district court convicted Milhausen of counts one and two and sentenced him to concurrent, 22-month sentences on each count.

Milhausen appeals.

**DECISION**

**I.     Milhausen is not entitled to a new trial because of the cumulative effect of prosecutorial misconduct.**

Milhausen argues that he is entitled to a new trial because the prosecutor engaged in multiple instances of prosecutorial misconduct. The right to due process includes the right to a fair trial. *State v. Duol*, 25 N.W.3d 135, 141 (Minn. 2025). Prosecutors are ministers of justice who "have an affirmative obligation to ensure that a defendant receives a fair trial, no matter how strong the evidence of guilt." *State v. Ramey*, 721 N.W.2d 294, 300 (Minn. 2006). Consequently, prosecutorial misconduct may result in the denial of a fair trial. *Id.* ("The overarching concern regarding prosecutorial misconduct . . . is that [the] misconduct may deny the defendant's right to a fair trial.").

The standard of review for prosecutorial misconduct depends on whether the defendant objected to the alleged misconduct. "For objected-to prosecutorial misconduct, [courts] have utilized a harmless error test, the application of which varies based on the severity of the misconduct." *State v. Wren*, 738 N.W.2d 378, 389 (Minn. 2007). When a defendant does not object to the alleged misconduct at trial, we apply the "modified plain-error test." *State v. Portillo*, 998 N.W.2d 242, 248 (Minn. 2023) (quotation omitted). Under this test, the defendant must show that the prosecutor's conduct constituted (1) error and (2) that the error was plain. *Id.* "An error is plain if it [is] clear or obvious," which is usually established "if the error contravenes case law, a rule, or a standard of conduct." *Ramey*, 721 N.W.2d at 302 (quotation omitted).

4

Milhausen argues that the prosecutor engaged in prosecutorial misconduct during the state's case-in-chief by introducing evidence in violation of the district court's pretrial order. Milhausen also contends that the prosecutor committed misconduct during closing argument by (1) misstating a witness's testimony, (2) inflaming the passions and prejudices of the jury, and (3) relying on facts not in evidence. Milhausen does not clearly apply either the plain-error or the harmless-error standard of review, nor does he argue that any individual instance of misconduct is sufficiently prejudicial to warrant reversal. Rather, he asserts that the cumulative effect of the alleged prosecutorial misconduct deprived him of a fair trial. We therefore first consider whether the conduct identified by Milhausen constitutes prosecutorial misconduct under the applicable standard of review and we then consider whether the cumulative impact of any misconduct entitles him to a new trial.

### Violation of Pretrial Order

Milhausen argues that the prosecutor engaged in prosecutorial misconduct by introducing an unredacted warrant of commitment contrary to the district court's pretrial order. A prosecutor engages in misconduct when they introduce evidence the district court previously ruled inadmissible. *See State v. Ray*, 659 N.W.2d 736, 744-46 (Minn. 2003).

Before trial, Milhausen moved in limine to exclude any reference to his prior convictions or, alternatively, to limit any such evidence to "unspecified convictions." The state moved to impeach Milhausen with evidence of three felony convictions. The district court ruled that, if Milhausen testified, the state could impeach him with evidence that he had a felony conviction for failure to register as a predatory offender as well as two other unspecified felony convictions. But the district court ordered that the warrant of

5

commitment for the failure-to-register conviction must be "redacted to remove sentencing components and/or dismissed charges." Despite the court's pretrial order, the state offered the unredacted warrant of commitment as an exhibit at trial. The unredacted warrant of commitment contained the length of Milhausen's prison sentence and listed more than 15 sentencing conditions. The district court admitted the unredacted warrant of commitment into evidence.[2]

The state concedes that the prosecutor erred by failing to redact the warrant of commitment as ordered by the district court. Because the district court's pretrial order ruled that the sentencing details contained in the warrant of commitment were inadmissible and must be redacted, we agree that the prosecutor committed misconduct by introducing the unredacted warrant of commitment. *See id.*

### Closing Argument

Milhausen argues that the prosecutor engaged in multiple instances of prosecutorial misconduct during closing argument. "In closing arguments, counsel has the right to present to the jury all legitimate arguments on the evidence, to analyze and explain the evidence, and to present all proper inferences to be drawn therefrom." *State v. Smith*, 541 N.W.2d 584, 589 (Minn. 1996); *see also State v. Porter*, 526 N.W.2d 359, 363 (Minn. 1995) ("While the state's argument need not be colorless, it must be based on the evidence

---

[2] Milhausen did not renew his objection at the time the state offered the unredacted warrant of commitment. But because the district court made a definitive ruling on Milhausen's motion in limine, the parties agree that Milhausen preserved his objection to admission of the unredacted exhibit. *See* Minn. R. Evid. 103(a) (providing that once the district court makes a definitive pretrial ruling admitting or excluding evidence, a party need not renew an objection to preserve a claim of error).

produced at trial, or the reasonable inferences from that evidence." (quotation omitted)).

When analyzing a claim of prosecutorial misconduct during closing argument, we consider the argument "as a whole," not "selected phrases and remarks." *State v. Smith*, 876 N.W.2d 310, 335 (Minn. 2016) (quotation omitted).

Milhausen contends that the prosecutor committed misconduct during closing argument by (1) misstating a witness's testimony, (2) making two statements that inflamed the passions and prejudices of the jury, and (3) making three statements referencing facts not in evidence. We consider each argument in turn.

*Misstatement of Testimony*

Milhausen argues that the prosecutor committed misconduct by intentionally misstating the testimony of a former roommate of Milhausen and A.O., who testified as part of the defense case. "It is unprofessional conduct for the prosecutor intentionally to misstate the evidence or mislead the jury as to the inferences it may draw." *State v. Peltier*, 874 N.W.2d 792, 805 (Minn. 2016) (quotation omitted).

During his testimony, the roommate stated that Milhausen told him that Milhausen and A.O. had been on FetLife together in an attempt to keep their relationship together. During closing argument, the prosecutor used the roommate's testimony to highlight inconsistencies in Milhausen's testimony, stating:

> One interesting thing, however, that [Milhausen] told [roommate], that he did not tell you, however, is that [Milhausen] was posting these images to save their relationship. Now that's a different story than what we heard, isn't it ladies and gentlemen? We heard that he posted these after the relationship ended, and she just allowed him to do that. That's a different story.

7

Milhausen objected after closing arguments. The district court noted the objection and, after discussing potential curative instructions with counsel, began its final instructions by instructing the jury that statements of attorneys are not evidence.

On appeal, Milhausen maintains that the prosecutor intentionally misstated evidence because, while the roommate testified that Milhausen said he and A.O. were on the website together to attempt to keep their relationship together, the roommate did not testify that Milhausen said he was "posting these images" to save the relationship. The state maintains that the prosecutor's remarks, while imprecise, were not an intentional mischaracterization of the roommate's testimony so as to constitute misconduct. We agree with the state.

The roommate testified that Milhausen told him that "it"—Milhausen's FetLife profile—was an attempt to keep Milhausen and A.O.'s relationship together. But it is unclear from the roommate's testimony whether "it" referred specifically to the creation of the profile, the parties' engagement with the profile, or the contents of the profile, which included sexually explicit material. While the prosecutor's characterization of the roommate's testimony may have been imprecise or even slightly inaccurate, the record does not support a conclusion that the prosecutor intentionally misstated the evidence. *See State v. Barthman*, 917 N.W.2d 119, 126 (Minn. App. 2018), *aff'd on other grounds*, 938 N.W.2d 257 (Minn. Feb. 5, 2020) (concluding that prosecutor did not intentionally mislead the jury when they "slightly misstated" a witness's testimony during closing argument).

To support his argument, Milhausen relies on *State v. Young*. In that case, the prosecutor told the jury during closing argument that a witness testified that her relationship

ended in October, when in fact the witness testified that it ended in August. 710 N.W.2d 272, 281 (Minn. 2006). The prosecutor used the inaccurate date as support for their argument that the defendant was the father of the witness's baby, born the following July. *Id.* The supreme court concluded that, while not ordinarily a basis for a claim of prosecutorial misconduct, "absent the incorrect date, the prosecutor's argument becomes implausible." *Id.*

The facts here are readily distinguishable. Unlike *Young*, the prosecutor's misstatement does not form the basis of an otherwise implausible argument. Rather, it reflects a reasonable inference from the roommate's testimony. *See Smith*, 541 N.W.2d at 589 (stating that during closing argument counsel may present to the jury "all legitimate arguments on the evidence" and "all proper inferences to be drawn therefrom"). The prosecutor therefore did not commit prosecutorial misconduct by intentionally misstating the evidence.

*Inflammatory Statements*

Milhausen next contends that the prosecutor committed misconduct by inflaming the jury's passions and prejudices. A prosecutor "must refrain from making statements that will inflame the passions or prejudices of the jury." *State v. Duncan*, 608 N.W.2d 551, 556 (Minn. App. 2000), *rev. denied* (Minn. May 16, 2000). When credibility is a central issue in a case, reviewing courts "pay special attention to statements that may inflame or prejudice the jury." *State v. Morton*, 701 N.W.2d 225, 236 (Minn. 2005).

Milhausen challenges two statements by the prosecutor as improperly inflaming the passions and prejudices of the jury because the statements "improperly shifted the jury's

9

focus" to an "emotionally charged narrative." First, the prosecutor stated, "do you really think a young mother in a small community wants these types of images shared with the world? No, she doesn't." Second, the prosecutor argued to the jury that "pornography is usually paid for. . . . Somebody got paid because people are watching these videos, and you have to pay to watch the videos. It wasn't [A.O.]. She wasn't the one getting paid." Milhausen objected after closing arguments to the first statement characterizing A.O. "as a young mother in a small community" but did not object to the second statement.

We are not convinced that the prosecutor's statements constitute misconduct under the standard for either objected-to or unobjected-to misconduct. The challenged statements were couched within the prosecutor's broader discussion about credibility and the reasonableness of the defense's theory. Immediately before describing A.O. as a young mother in a small town, the prosecutor argued that Milhausen's testimony that A.O. consented to disseminating the images was not reasonable considering A.O.'s testimony that she was concerned that posting the images would impact her children and her ability to interact with her community. Considering the closing argument as a whole, we conclude that the prosecutor's argument was a permissible reference to inferences that could reasonably be drawn from the evidence presented at trial. *See Smith*, 876 N.W.2d. at 335. Accordingly, the prosecutor did not commit misconduct.

We reach the same conclusion regarding the second challenged statement. Multiple witnesses testified that FetLife users must pay to watch video content and A.O. testified that she made a temporary account for purposes of verifying the photos and videos but otherwise did not use FetLife. After stating that someone was paid for the videos but it

10

was not A.O., the prosecutor argued, "[j]ust because lots of people consent to these things being posted doesn't mean A.O. does or did because she didn't." Given the context and the contested trial issue of whether A.O. consented to the material's dissemination, the prosecutor's argument was properly based on the evidence and the legitimate inferences to be drawn from that evidence. *See Smith*, 541 N.W.2d at 589.

*References to Facts Not in Evidence*

Milhausen contends that the prosecutor improperly referred to facts not in evidence during closing argument. As already discussed, a prosecutor's closing argument must be based on the evidence presented at trial and inferences reasonably drawn from that evidence. *Peltier*, 874 N.W.2d at 804; *see also State v. Bobo*, 770 N.W.2d 129, 143 (Minn. 2009) ("Prosecutors may not make arguments that are not supported by evidence.").

Milhausen's argument concerns the prosecutor's repeated references to matters that the jurors had agreed to during voir dire. Specifically, the prosecutor stated:

> So, how do we know [A.O.] had a reasonable expectation of privacy? I think that is pretty crystal clear, ladies and gentlemen. And I think you all agreed in [v]oir [d]ire that what happens in the bedroom is private.
>
> . . . .
>
> It's not uncommon for people to be sharing and taking these kind of images for each other, and that's the agreement, right? And you all agreed to this yesterday, that once a relationship ends, those images should be deleted, or at the very least not shared with others, and that's exactly what [A.O.] believed as well[.]
>
> . . . .

> [Y]ou all agreed in [v]oir [d]ire when we talked yesterday morning that sexual images between two individuals should stay between two individuals. That is a universal truth. A universal truth. They are not to be shared or published without explicit consent. An explicit agreement. In this case, [A.O.] is saying that there was no consent given in this, on these images, and that is pretty clear[.]

Because Milhausen did not object to these statements, our review is for plain error. *Portillo*, 998 N.W.2d at 248. "An error is plain if it [i]s clear or obvious," which is usually established "if the error contravenes case law, a rule, or a standard of conduct." *Ramey*, 721 N.W.2d at 302 (quotation omitted). Here, we agree with Milhausen that the prosecutor's repeated references to "what jurors agreed to in voir dire" was plain error because it contravenes well-established caselaw.

In *State v. Bauer*, the prosecutor referred to answers that jurors gave during voir dire, including jurors' answers about what they would do if someone asked them to sell drugs. 776 N.W.2d 462, 475 (Minn. App. 2009). The prosecutor then used those answers to attack the reasonableness of the defendant's version of events. *Id.* We concluded that while a prosecutor may urge the jury to rely on common sense, the prosecutor "improperly asked the jurors to use the answers that they gave during voir dire as a means to determine the credibility of [the] defense." *Id.*

Like the prosecutor's statements in *Bauer*, the prosecutor's statements in this case went beyond the evidence presented at trial by referencing jurors' answers during voir dire on the issue of whether, in their experience, sexually explicit images should be shared outside a relationship. The prosecutor urged jurors to rely on those answers to assess Milhausen's credibility on the issue of whether A.O. consented to Milhausen's

12

dissemination of the sexually explicit images and videos. In so doing, the prosecutor plainly erred and committed prosecutorial misconduct. *See id.*; *see also Wren*, 738 N.W.2d at 392 (holding that references to jurors' responses in a pretrial jury questionnaire went "beyond the evidence" and indicated prosecutorial misconduct).

### Cumulative Error

Milhausen argues that the cumulative effect of the prosecutorial misconduct entitles him to relief. A defendant "may be entitled to a new trial in rare cases where the errors, when taken cumulatively, have the effect of denying the appellant a fair trial." *State v. Fraga*, 898 N.W.2d 263, 278 (Minn. 2017) (quotation omitted). "When considering a claim of cumulative error, we look to the egregiousness of the errors and the strength of the State's case." *Id.* We also consider whether the misconduct was isolated or mitigated either by the district court's instructions or defense counsel's closing argument. *Id.* (determining that errors at trial were not egregious on the basis that instances of misconduct were "brief[]" and "accompanied by a limiting instruction").

In this case, we identified two instances of prosecutorial misconduct: introducing the unredacted warrant of commitment contrary to the district court's pretrial order and relying on facts not in evidence during closing argument. Milhausen does not argue that either instance of misconduct was individually sufficiently prejudicial to warrant a new trial. Our careful review of the record convinces us that this is not the "rare case" in which the cumulative effect of the misconduct requires reversal. *See id.*

First, the errors were isolated. The state offered the unredacted warrant of commitment for the sole purpose of impeachment and did not reference any of the

13

sentencing details when the document was introduced or during closing argument. *See Peltier*, 874 N.W.2d at 806 (stating that a prosecutor's improper remarks were not egregious when the state did not "emphasize, or repeat, any of these points, and none of them [were] central to the State's case"). As far as the prosecutor's argument referring to the juror's answers during voir dire, the prosecutor's three statements consist of approximately half a transcript page in a closing argument otherwise spanning over 15 pages. *See id.* (holding that improper statements spanning one full page were not egregious in light of a 39-page closing argument).

Second, the district court's instructions mitigated the effect of the prosecutor's misconduct. After the state introduced the unredacted warrant of commitment, the district court instructed the jury that "[e]vidence concerning a prior conviction of Mr. Milhausen is admitted only for the purpose of considering whether he's telling the truth in this case. You must not consider . . . this conviction as evidence of character or conduct, except as you think it may reflect on credibility." As part of its final instructions, the district court told the jury that statements by the attorneys are not evidence and that the jury should disregard any statements which differ from its recollection of the evidence and instead decide "factual issues solely [based] on your own memory." We assume the jury followed the district court's instructions. *See State v. Taylor*, 650 N.W.2d 190, 207 (Minn. 2022) (stating that a court's instruction that jurors should rely on their own recollections mitigated any impact of a prosecutor's misstatements during closing argument).

Finally, the supreme court has stated that courts should be more inclined to order a new trial "in very close factual cases." *Fraga*, 898 N.W.2d at 279. Here, the state's

14

evidence was relatively strong. The contested issue at trial was whether Milhausen posted the photos and videos without A.O.'s consent. A.O. testified that she never consented to Milhausen posting the photos online and she asked Milhausen to delete them once the relationship ended. The state's evidence established that, while Milhausen's FetLife profile was created when the parties were together, Milhausen posted the sexually explicit material after A.O. had moved out and the relationship was over. A.O.'s testimony that she was concerned that her children and other young people in the community would learn about the photos and videos—which tends to show that she did not consent to public posting—was corroborated by text messages and the investigator's description of A.O.'s reaction and demeanor upon learning that the material was online. Thus, while the jury had to weigh the parties' relative credibility, this is not the close factual case that requires reversal for cumulative error. *See id.* at 278.

In sum, we conclude that the cumulative impact of the two instances of prosecutorial misconduct—introducing the unredacted warrant of commitment and referring to facts not in evidence—did not sufficiently "tip the scales" to deprive Milhausen of a fair trial. *See id.* (quotation omitted).

## II. The district court erred by listing convictions for all five counts on the warrant of commitment.

Milhausen argues, alternatively, that the warrant of commitment incorrectly lists convictions for all five counts. The state agrees that we should reverse and remand for correction of the warrant of commitment. We also agree.

15

Minnesota law provides that, "[u]pon prosecution for a crime, the actor may be convicted of either the crime charged or an included offense, but not both."  Minn. Stat. § 609.04, subd. 1 (2022).  Courts may correct clerical errors in the warrant of commitment at any time.  Minn. R. Crim. P. 27.03, subd. 10.

The jury found Milhausen guilty of all five counts.  The district court adjudicated Milhausen guilty on counts one and two while stating it was "specifically and intentionally" not entering convictions or imposing sentences on counts three, four, and five.  Contrary to the court's oral pronouncement, however, the warrant of commitment lists convictions for all five counts.  Generally, appellate courts "look to the official judgment of conviction in the district court file as conclusive evidence of whether an offense has been formally adjudicated."  *Spann v. State*, 740 N.W.2d 570, 573 (Minn. 2007) (quotations omitted).  But when a district court's orally pronounced sentence differs from the warrant of commitment, the oral pronouncement controls.  *State v. Statloch*, 643 N.W.2d 329, 331 (Minn. App. 2002).  Because the warrant of commitment conflicts with the district court's oral pronouncement by erroneously stating that Milhausen was convicted of all five counts, we reverse and remand to the district court to correct the warrant of commitment so it reflects convictions on counts one and two only.

**Affirmed in part, reversed in part, and remanded.**